STATE, EX REL. GARBER, TRUSTEE, *v.* MOCK ET AL.

[No. 3,035. Filed February 23, 1899.]

TOWNSHIP TRUSTEE.—*Failure to Pay Over Funds.—Suit on Bond.—Report.—Sureties.*—In an action on the official bond of a township trustee for failure to pay over money in his hands, the statement in his annual report of the amount of money received from his predecessor is, in the absence of fraud or mistake, conclusive against such trustee, but is not conclusive against the sureties on such bond; they having the right to defend on the ground that the defalcation occurred during the predecessor's term of office. *pp. 631, 632.*

SAME.—*Collection from Predecessor.—Bond.*—In an action on the official bond of a township trustee conditioned faithfully to collect and account for all township money, for failure to collect township money from his predecessors in office, it is no defense that such predecessors were insolvent, when their several bondsmen are not shown to have been insolvent. *p. 633.*

SAME.—*Collection from Predecessor.—Bond.*—Where a township trustee's bond is conditioned that he shall collect all moneys due

State, *ex rel.*, *v.* Mock.

and belonging to the township, his sureties are liable for his failure to collect the amount of a shortage occurring during a predecessor's term, where it is not shown that the trustee could not have collected the same. *p. 635.*

From the Kosciusko Circuit Court. *Reversed.*

*A. G. Wood* and *F. E. Bowser*, for appellants.

*L. R. Stookey* and *A. F. Biggs*, for appellees.

ROBINSON, J.—This cause was transferred from the Supreme Court. Appellant brought suit against appellee Mock, as principal, and the other appellees, as sureties, on two several bonds of Mock as township trustee.

The first paragraph of complaint avers that, in 1893, Mock was appointed trustee, and executed his bond with James C. Jarret, John F. Bockman, Isaiah Kuhn, Albert B. C. Warner, Orlando F. Gerard and Philip Beghtel as sureties; that he received funds amounting to several thousand dollars; that, in 1894, Mock was elected his own successor, and gave bond with Orlando F. Gerard, Joseph Mock and Philip Beghtel as sureties, and received additional sums of money; that relator Garber was elected trustee, and entered upon the duties of his office in 1895; that, at the expiration of Mock's term, he had in his hands a large sum of township money which he failed to pay over. The two bonds are made exhibits.

The second paragraph avers the appointment of Mock to fill the unexpired term of one Jasper Angel; that at that time there was due Mock from Angel, as trustee, a certain sum; that $410 thereof Angel failed to pay over to Mock; that, during Mock's term, Angel paid him $50 of such sum, but failed to pay the balance, $360; the execution of the two bonds by Mock is shown, the breach thereof, and a breach of duty thereunder in failing to collect the money from Angel.

The third paragraph is substantially as the second,

but avers that the shortage occurred during the term of one Philip Arnold, who was trustee immediately preceding Angel; that, when Angel took the office, there was a large amount of money of the township in Arnold's hands, $410 of which he failed to pay to Angel. The paragraph avers the execution of the two bonds by Mock, the breach thereof, and breach of duty on the part of Mock in failing to collect the money from Arnold.

Appellee Mock answered the first paragraph of complaint in four paragraphs, to the first, second, and fourth of which, a demurrer was sustained, and overruled as to the third. The sufficiency of this third paragraph is the first question presented. This answer alleges Mock's appointment to succeed Angel; that, at that time, Angel had $1,713.01 township money, which he paid over to Mock, except $410; that, in his annual report to the board of commissioners, Mock showed there was $410 due from Angel to the township, which Angel had failed to pay over; that, upon the examination of such annual report, the board refused to accept and approve the same, unless Mock would first charge himself with the $410, which he then and there refused to do until he was assured by the board and county auditor that it was just and proper that he should do so; that upon being thus assured that it was his official duty to so charge himself with the $410, and relying upon the advice and counsel of the board and auditor, he then and there permitted the county auditor so to change his report, which was done with the full knowledge of the board, so as to charge him with all of the $410 shortage and which he had never received; that the facts of such shortage were fully known to the board and auditor; that after such change the board approved the report; that appellee was elected to succeed himself, and

qualified as such trustee; that Angel paid $50 on such shortage; that at the time of making his second annual report, relying upon the former statements of the board and auditor, he charged himself with the shortage of $360, which report the board approved, with full knowledge that such sum had not been received from Angel; that, at the expiration of his term of office, he turned over to the relator all moneys he had received from all sources belonging to the township, less expenditures. The demurrer to this paragraph of answer should have been sustained. The statement of the trustee in his annual report of the amount of money in his hands is conclusive against the trustee in a suit on his official bond. There is no charge of any fraud or mistake. It was the duty of the board of commissioners to accept a report only when it showed the proper debits and credits. The acts of the board and auditor in reference to the report still leave it the voluntary act of the trustee. He was not bound to accept anything from his predecessor but money. If he should choose to accept a note or verbal promise of his predecessor, and voluntarily charge himself with cash, he cannot be heard to complain afterwards. He was not deceived. No fraud was practiced upon him. No mistake was committed; and, in the absence of fraud or mistake, the action of the board approving the report, while it remains in force, is conclusive against him. He was liable under his bond, not only for all moneys he actually received, but for moneys due the township, and which might have been collected. With full knowledge of all the facts, he made his second annual report, and again charged himself with the amount, and without any pretense of fraud or mistake.

In passing upon a trustee's report, the board is acting in a purely administrative or ministerial capacity.

It is the agent of the particular township for the particular business, and is not authorized to estop the township in the manner claimed from the collection of funds properly belonging to it. It is not the intention of the law that a shortage may be handed down from one trustee to another by reports correct upon their face until the township right is cut off by limitation. These reports give the public its only information as to the condition of the public funds, and to permit the officer to impeach them, and to show that he did not in fact have the money the report said he had, would not be conducive to the safety of the public funds. *State, ex rel.*, v. *Grammer*, 29 Ind. 530; *State, ex rel.*, v. *Prather*, 44 Ind. 287.

In so far as the above cases hold that the annual report of the trustee is conclusive against the sureties on the trustee's bond, they have been overruled by the decision in *Ohning* v. *City of Evansville*, 66 Ind. 59. But, as to the effect of such report as against the trustee, the doctrine of the above cases is still the law in this State.

The second paragraph of answer of appellee Mock to the second and third paragraphs of complaint alleges that the deficit existed at the time Angel and Arnold and each of them filed their bonds and entered upon their duties as trustee, and that they had never received such deficit from any source; that at the time appellee Mock filed his bond, and during his term, Angel and Arnold were insolvent, and at no time had either of them any property subject to execution. The fact that Angel and Arnold were insolvent did not necessarily preclude the collection of the money. No facts are pleaded showing it was impossible to have collected the money from their bondsmen. The paragraphs of complaint to which this paragraph of answer is directed declare upon a breach of the bonds

State, *ex rel.*, *v.* Mock.

in failing to collect the money from such predecessors respectively. These paragraphs of complaint show that Angel and Arnold were trustees for certain periods. As such officers, they gave official bonds. The answer purports to go to the whole of each paragraph, and should show that the money could not have been collected by a suit on these bonds. It was the duty of the trustee under his bond to collect all moneys belonging to the township, and, before he can be excused from collecting it he must show that its collection was not possible. The demurrer to this paragraph of answer should have been sustained.

*Quaere:* Whether the trustee would be excused by simply showing that the parties owing the money were insolvent, or whether he should not reduce such a claim to a judgment, and thus preserve to the township a claim which would otherwise become barred by the statute of limitations.

Overruling the demurrers to the second paragraph of answer of Jarret, Bockman, Kuhn, Warner and Beghtel, and the second paragraph of answer of Gerard, Mock, and Beghtel, to the first paragraph of complaint, is assigned as error. These answers are filed by each set of sureties, separately, on the two bonds of appellee Mock. The question presented is whether sureties on a trustee's bond are liable for a deficit in township funds caused by the defalcation of their principal's predecessor, and whether, in a suit against them and their principal for such deficit, they may show that the same did not occur during their principal's term. These questions have been decided by the Supreme Court adversely to appellant in *Ohning* v. *City of Evansville, supra.* In that case it is held that, upon prospective bonds, the sureties therein cannot be held liable for the defalcation of their principal which occurred during a prior term and the existence

of a prior bond, and "that new sureties are not responsible for prior defalcations, unless the condition of the new obligation shall embrace them." See, also, *Goodwine* v. *State, ex rel.*, 81 Ind. 109. In the case at bar the first paragraph of complaint seeks to hold the sureties as for moneys coming into the hands of the principal which he has failed to pay over to his successor. There was no error in overruling the demurrer to these answers.

Overruling the demurrers to the second paragraph of answer of the two sets of sureties to the second and third paragraphs of complaint is assigned as error. These demurrers should have been sustained. The bonds were conditioned that the trustee "shall faithfully collect and receive all moneys belonging to said township, expend the same as required by law  *  *  correctly account to the board  *  *  *  deliver up to his successor in office all books,  *  *  *  and pay over to him all moneys on hand belonging to said township." No excuse is shown for not collecting the money from the bondsmen of the two former trustees; and, as we have seen above, the fact that they were insolvent during Mock's term did not excuse him from attempting to collect the money. Their bonds may have been good for the amount. It is not shown that they were not. It cannot be said that the bonds in the case at bar are wholly prospective, as in the case of *Ohning* v. *City of Evansville, supra.* The condition in the bonds in the two cases is materially different. In the case at bar the sureties obligated themselves that the principal would faithfully collect all moneys belonging to the township. These paragraphs of answer fail to show he has done this, and are insufficient answers to the paragraphs of complaint to which they are addressed.

Judgment reversed, with instructions to sustain the

demurrers to appellee Mock's third paragraph of answer to the first paragraph of complaint, and to his second paragraph of answer to the second and third paragraphs of complaint, and the demurrer to the second paragraph of answer of the two sets of sureties to the second and third paragraphs of complaint.

Henley, J. dissents.